at all. Arguments not to exceed 15 minutes per side. Mr. Brooks, for the petitioner of the FDIC's Appellate Litigation Unit, I have requested that three minutes of my time be reserved for rebuttal. Thank you. Under a well-established default rule, a parent corporation holds any portion of a consolidated tax refund that is allocated to its subsidiaries, as an agent or trustee. The question presented is whether... Is that limited to situations where it is so specified somewhere and here it's not? Just the opposite, Your Honor. In the absence of any... In the absence, okay, yes. And that is why the question presented here is whether a tax sharing agreement that was entered into by AmTrust Bank and its parent, Appellate AFC, conclusively disavows that default rule and gives to AFC a $170 million tax refund that would otherwise belong to the bank. The answer is no, because the tax sharing agreement is silent, or at best, ambiguous regarding who owns the tax refund. And therefore, under controlling Supreme Court and Sixth Circuit precedent, the default rule applies. Now the District Court didn't agree with that. What the District Court said is that by its reading of the tax sharing agreement, it created a debtor-creditor relationship with respect to tax refunds, and that overrode the default rule. That decision has been entirely discredited on its own merit, and here's why. The District Court did not conduct any independent analysis here. Rather, it adopted in its entirety the analysis of the Central District of Bank United and NetBank no less than 22 times. And its basic foundation is this. Because a tax sharing agreement includes innocuous words like reimbursement or pay, that conclusively overrides the default rule and creates a debtor-creditor relationship. Let's assume that we agree with you that the TSA is silent on what the relationship is. Then we have to figure out, what do we do next? Now you automatically then gravitate to this default rule, and you, I think, correctly say that it has been adopted by three other circuits. But I'm still trying to figure out why we would apply federal common law, i.e. this default rule, in connection with a property question, which under the Bankruptcy Code is determined by state law. So why would we apply this default rule if there is state law that either is or should be able to be applied by the district judge under the facts of this case to answer the question? Well, to begin with, Your speak to why apply, create federal law, a default rule, and not look at state law. They just assume it. They don't talk about it. Well, Your Honor, let me begin by saying that it is far from clear that the Bob Richards case, which is the initial case that applied this very general default rule in this context of tax refunds, it is far from clear that it was applying a federal common law rule. The Court doesn't say that it was. But even if it was, it's also clear that the default rule that it applied is supported by state resulting trust law. That was true in California. It's also true in Ohio. And I think... But if it's supported by, if we apply state law, and Your position is supported by the then look at, why do we even speak about something called a default rule? And how could a California case establish a default rule in connection with Ohio law? Obviously it can't. Well, Your Honor, I would point to two decisions. Judge White's decision out of the Northern District of Ohio Bankruptcy Court in Inway Revco. He applied the rule. More importantly, perhaps, and more to the Court's own decision in the Inway New Power case. Now, Inway New Power did not go off on trustee. It went off on agency. And if you read Bob Richards, Bob Richards refers to the default rule here as creating an agent or trustee. What Bob Richards says, what these cases say is that if the parent company is an agent here, because it holds the tax refunds for the purpose of simply passing them on to its subsidiary, the parent company is an agent and it acts as a trustee of a specific trust. In the Inway New Power case, this Court focused first on the fact that the debtor there admitted in testimony that he was an agent. But then the Court went on to say as follows, and I think this ties the two points together. Quote, during sentencing for the criminal charge of embezzlement, debtor admitted that he operated as the kitchen's agent. And the kitchens are the claimants there. And then the Court goes on to say, and I think this is key, debtor clearly did not have authority to do with the funds as he wished, as all evidence indicated that the kitchens sent the money to him for the sole and express purpose of depositing it with the corporation once it formally became an agent. And this Court therefore concluded, consequently, the Bankruptcy Court erred in concluding that these funds were part of debtor's bankruptcy estate. Now, Your Honor, that language... Did you cite Inway New Power anywhere? Yes, we did, Your Honor. It's in our reply brief. It's discussed for the specific purpose of saying, it's both cited and quoted. That's the name of it, Inway, and then a word that starts with an N? I think the Inway New Power is in parentheses. The name of the case is escaping me now. I can find it for Your Honor. But it is in our reply brief, and I can find the... That's all right. You can find it later. I'll get it. Because it's not in your index. It's not in your table of authorities. And that appears, Your Honor, at 233 F3934. Now, that language about the debtor clearly did not have authority to do anything other than what was expressed and understood, that is resulting trust language. That shows that agency and resulting trust are two sides of the same coin, and that is this Court's case law. And as I indicated, Your Honor, the rule has been applied broadly. There's never been any issue about whether the rule should be applied. Indeed, there's never been any issue among these parties for years and years and years until the bankruptcy case was filed. What rule are we now talking about, this FDIC default rule or the Ohio trust law rule? Your Honor, it's not an FDIC default rule, but the rule I'm talking about is the rule that an agent acts as the trustee of a specific trust, that a parent company holds tax refunds as an agent. And the language that I think states the rule better than I ever could, Your Honor, if I wanted to state for you the rule that we want here today, I could not write it better than this. Because the company, AFC, acts as an agent for its consolidated group with respect to tax matters, the company does not own and must promptly remit to the subsidiary bank or its subsidiary, as the case may be, their respective allocable share of any such refund, and the company has no rights in or to the bank's or its subsidiary's share of any consolidated refund. That is language that AFC insisted be inserted in an agreement that it executed less than 90 days, less than 90 days before bankruptcy. That statement was made three years after the operative tax sharing agreement was entered into. That statement is the Bob Richards default rule. And, Your Honor, I believe, as most people do, that actions speak louder than words. This is not a statement in a vacuum. Barely five months before bankruptcy was filed in this case, a tax refund was received by AFC, a consolidated tax refund, for the prior tax year, the year immediately prior to the year in issue here. And on the very same day that AFC received that consolidated tax refund, it sent $112 million to the bank. So there's no real issue here that the parties always recognize that this default rule applied. But Chief Accounting Officer supported the language in the agreement. Absolutely. The Chief Accounting Officer said that never in his experience, while an officer for these companies, did he ever describe the bank's right to future tax refunds as anything other than an asset of the bank. And there were financial statements filed as well, Your Honor. We point this out in the bank. February 3, 2009, a few months earlier, audited financial statements characterized the refunds as an asset of a bank. May 2009, a cash flow forecast prepared for the bank's senior lenders called the, quote, allocable portion, unquote, of the refund the bank's asset. And, Your Honor, there's also, in addition here, the interagency policy statement that's been issued by the four banking agencies that regulate banks here. This interagency policy statement is important for two reasons. First of all, as the 11th Circuit said in NetBank, this is the background against which these highly regulated entities entered into this tax sharing agreement. But beyond that, the prior agreement, the 1996 tax sharing agreement, says, it says almost expressly, I have it almost exactly right, that we are entering into this tax sharing agreement because the OTS, our bank regulator, encouraged us to do so. Your Honor, it strains credulity to say that these parties only entered into this tax sharing agreement because the OTS encouraged them to do so, but they then violated the guidance that's offered by OTS. Mr. Brooks, I think I get all these arguments, but aren't all of the things that you've been talking about for the last five minutes or so basically all extrinsic evidence that you rely upon to interpret an agreement that you contend is silent on this point? Some of them are, Your Honor, but there are three reasons why. And so are you asking us now to interpret this extrinsic evidence and apply it to the agreement, or are you encouraging in that sense us to remand it back to the district judge and tell him to do it? Preferably the second, but possibly the first, Your Honor. Okay, well, let's stick with the second. So now when we do that, I mean, if we do that, I'm still hung up on what the FDIC, how you characterize this so-called default rule, because I think I might have said federal common law, and you said no, it's not. So are you basically arguing that we apply state law, but in doing so there is a presumption that's layered over state law by Bob Richards? Am I saying that correctly? No, Your Honor. Let me try and clarify it. What do I do with Bob Richards? If I want the district court to look at this extrinsic evidence in connection with applying Ohio law, what do I do with Bob Richards? How does that fit into that? Your Honor, as I said earlier, Bob Richards itself is unclear. We believe that Bob Richards is a federal common law rule and that it should be applied. However, as we've been told— You just told me it wasn't. Excuse me? You just told me a minute ago it wasn't. Maybe not as clearly as I would have liked, but what I meant to say was this, Your Honor. Whether it's federal common law or not, the same result is achieved under state resulting trust law. And what the courts have said is when a court is confronted with an issue where one party asserts that the rule of decision is federal common law and the second party says that it's state law and the same result is achieved, there's no need to decide whether it's federal common law or state law. You apply the rule. Our view in the first instance is that this is federal common law. However, if the court disagrees that this would have been an appropriate place for even Bob Richards, the Ninth Circuit, to apply federal common law, the case is then based on resulting trust law. It's the same default rule. Alternatively— If you get what you want in option number two, as we stated it earlier, i.e. a remand for the district judge to look at this extrinsic evidence and interpret this agreement, what would you have us say to the district judge in terms of applying a federal common law rule versus an Ohio trust law rule? Your Honor, let me just say, perhaps I had them in reverse order. We would say option one as a second option two. The reason why we would say option one— You're flipping on me. You know that, right? I apologize, Your Honor. Just once I think I got it, then you flip on me. I thought that I had them in the right order. Our view is this. In the first instance, we believe that the tax sharing agreement does not unambiguously disavow the default rule, and that's all you need to know. You apply the default rule and we win. If you disagree, then we believe that the tax sharing agreement, per Bank United, per Net Bank, because it does not expressly say what happens, who owns the tax refund when it's received by the parent company, it's ambiguous. The court's role, once it finds an agreement as ambiguous, is in the first instance to try to resolve the ambiguity applying basic contract rules, and that's the background and the conduct of the parties. Your Honor, we believe there are at least three separate reasons— You've answered my question. Okay. Thank you very much. I see my time is up. It is. Thank you, Counsel. Good morning, Your Honors. May it please the Court. That last five minutes of dialogue, I think, illustrates the FDIC's problems here. They are all over the map. They have taken inconsistent positions between the District Court and this Court, and between their opening brief and their reply brief. And nowhere is that more pronounced than with Bob Richards. They told the District Court expressly that it was a rule of California law. And now they're telling you it's a rule of federal common law. Of course, they never explain how this is a rule of federal common law consistent with U.S. Supreme Court guidance in this area, because they can't. They have no argument in response to that. But would you agree, Mr. Bergeron, that we really don't need to decide whether there is a federal common law, and if so, what does it say, and how does it apply, until we know whether that would come to a different conclusion than applying state law, which we would, it seems to me, typically do in this area? You absolutely apply state law. So, if we assume that the District Judge—I want you to make the same assumption I asked Mr. Brooks to make, and that is the District Judge was just dead wrong in saying it was unambiguous and that you win. So, we're back to now, it is ambiguous, and it's ambiguous because it's silent on this sort of a property, piece of property. So, it seems to me in that instance, because he didn't examine the extrinsic evidence, we either have to examine it ourselves, and there are 2,000 pages of it, or we've got to send it back. So, what would you have us do? I would have you affirm in that basis. Affirm what? Affirm the judgment of the District Court. Affirm what I just asked you to assume that we didn't agree. No, no, no. If you find it ambiguous, if you find it ambiguous, they lose. And they lose because what they are telling you you need to find is that there is a resulting trust. That is, they finally come out in their reply brief and say, now our theory is resulting trust. Okay, if that is their theory, they have to show that they have alleged that there is some resulting trust here. And what is the basis for the resulting trust? The only basis, it's not in the TSA. They acknowledge there is no trust language in that document. The only basis for it is this Bob Richards rule. That's all. That is all they have to establish a trust. The problem I'm having with that is that all of the extrinsic evidence that we've been cited, it seems to me almost all of which comes from the FDIC, seems to suggest that this was not a debtor-creditor relationship. So, I don't see how you, if we start with a presumption or the assumption that the agreement is silent, and I know you don't like that, but if we start with that assumption, I don't see how you win. Well, Your Honor, if the agreement, two things on that. First, the extrinsic evidence that they're talking about is largely people saying, yes, we complied with the contract. So, that is not inconsistent with a normal debtor-creditor relationship. We owe the money per the contract. Fine. That is a far cry from saying there is actually a trust relationship. Now, remember, under Ohio law, you have a very high standard to show a trust. In all doubt, you know, if there's any doubt, there's no trust. You have to show clear and convincing evidence. So, simply saying that over the course of the last ten years, we complied with the contract, doesn't establish, doesn't prove anything with respect to the actual language of the contract. I agree. But, I mean, it doesn't, what about with respect to ownership? With respect to ownership, that's where you have to look at Section 541, Your Honor. And I think that that is the, that is where Bank United went astray because it said, hey, we're going to ignore the bankruptcy context here. You have to, and this is consistent with OMEGA's, you have to consider what, you know, we're in bankruptcy now. We're in bankruptcy and 541 has a broad conceptualization of what the estate is. And consistent with OMEGA's, that has priority over, I mean, the equities of bankruptcy have priority over the equities of the commonwealth. You rely on OMEGA's, but OMEGA's concerned a constructive trust. Exactly. Quite different. Well, they are different. So you think that's legally distinguishable? Not in this circumstance, and here's why, Your Honor. Certainly there are differences between constructive and resulting trust. But what motivated the court in OMEGA's was the fact that it was an equitable remedy imposed by the court. And that is exactly what a resulting trust is under Ohio law. And so there's no, and it defeats the overall policy of writable distribution of the estate. They say, you know, we're trying to get the whole refund. No, it's going to be distributed amongst the unsecured creditors, of which they are the largest. So that is the whole purpose of OMEGA's, and it is entirely consistent with resulting trust to have it apply in that circumstance. You concede that the tax sharing agreement makes no mention about tax refunds, does it? No, I do not. It talks about tax liability. Your Honor, if you look at Section 4 of the TSA, it says that if you make an application for a tentative loss carryback refund, which is exactly what they tell us happened in the complaint, so that's what happened, and if there is any adjustment based on that, which is, what's the adjustment? The adjustment is the refund. Then you take that and you apply it pursuant to this contract, and you promptly settle all amounts owing amongst the parties. And I also want to respond to the ambiguity point. They say, we don't know what to do with the refund under the agreement. It's unclear. It's ambiguous. They filed an expert report, Your Honor, that walked through this very agreement and said, here's what we do with the refund. Here's how we figure out how we get to $170 million. So for them to stand up here and say it's ambiguous, we have no idea what to do with this, it's disingenuous. They're saying it's unambiguous in the other direction in their favor. That's what the bank and the holding company did the prior year. The holding company immediately sent the $110 million or whatever back to the bank. And that's my point, Your Honor. It's a purely contractual relationship. This is no different than any other intercompany agreement between affiliates where you have some affiliate maybe paying for more of the services than the other, and at the end of the day, you true it up, you net it out. That's exactly what this achieves. They want you to recognize a resulting trust under Ohio law. It is not in here. What this is talking about is reimbursing the parties, paying the parties. Do you have any case that says in this kind of situation that it's a debtor-creditor relationship between a holding company and the subsidiary? Absolutely, Your Honor. All of the cases that we cited in our brief, I grant you most of them are district courts other than the Second Circuit one, the first central one. But they go through this very language and say words like reimbursement and payment are indicative of a debtor-creditor relationship. And we have something beyond that, which is this clause in Paragraph 4 that says the parties shall promptly settle amounts owing between them. Now look, if the parties here wanted to create a trust, any first-year attorney knows how to do that. You would say we hold it in trust. You segregate the account. You don't commingle. That didn't happen here. And remember, they are not seeking the entirety of the $195 million consolidated refund here. They are seeking a portion of that, $170 million. The portion that I take it everyone acknowledges results from a benefit that seems deservedly to belong to AmTrust. And yes, it is attributable to the operating losses caused by AmTrust. But the other thing I would say on that in terms of who deserves what, remember, we're a bank holding company. We infuse capital into the bank. So for them to say it's all the bank's money is divorced from reality because a lot of it is our money, Your Honor. And that's why when they say this isn't fair, that's part of my response to that. A, it is fair because it's a consolidated group. And B, we're in bankruptcy. And this is exactly what the Second Circuit talked about. We're sorry. The whole reason for filing a consolidated tax return is because of the IRS regs, right? Yes, that's right, Your Honor. That's right. Well, what your argument seems to ignore, if that's the right word, is that if we get to this extrinsic evidence, and that's a question unto itself, but if we get to that, all the people that drafted this agreement seem to say it means something other than what you're arguing. But more importantly, the whole context in which you entered into this tax sharing agreement, this government obligation that you've got to have one, the whole reasoning seems to be contrary to what you're now saying the agreement clearly said. Your Honor, I don't think the reasoning is inconsistent with that. And in terms of the extrinsic evidence, I'm not aware of any witness who said, yes, it was intended to be a trust. Now, remember, a resulting trust. When you say that no witnesses on the subject were allowed by the district court, were they? Your Honor, I believe they were. They took the deposition of just about everyone on. But, I mean, okay, the district court considered that testimony? No, no. That's my point. Yes, yes. I mean, they took the deposition. District court did not consider it because it was extrinsic evidence. Right, right, right. But nobody's going to say we drafted something that relied upon the doctrine of resulting trust. It results because there wasn't a trust. It's not my theory, Your Honor. It's theirs. I got that. I'm back to trying to figure out what the contract meant. Right. And all the extrinsic evidence seems to suggest it means something the exact opposite of what you say is both clear or what it means if it's ambiguous. So how do we deal with that? Well, Your Honor, and maybe I'm not understanding your question, but my point about the extrinsic evidence is that that showed that they were following the contract. So, yes, if there's not a bankruptcy, we would pay this money to the bank. Okay? We're not disputing that. But there is a bankruptcy, so we can't under 541. What we would pay begs the question of whether you held it as a debtor to the bank or whether you held it as an agent. Right. And that's where you look at this agreement, and there is no indicia of a trust relationship in any shape or form. There's no indicia of a creditor-debtor relationship? And that's where I disagree, Judge Goldman, because if you look at the reimbursement and payment language in here, and that's what several other district courts have held, including the Downey case that just came down that we cited in our brief, that is indicative of a debtor-creditor relationship. Okay, but a trustee can hold money and owe a payment. Why is that language exclusively debtor-creditor? Well, I don't say that language, end of story, game over. That's exactly what the district court did. Those words, game over. Right. But what I would say is there is also the other provision of Section 4 about the parties settling the amounts owing between them, which is, I mean, if you're settling amounts owing between you, that is prototypical debtor-creditor relationship. The old days settler and trustee were synonyms. I don't recall. That's before your time. I was back in Blackstones here. But the other thing the courts look at is, is there any segregation? Can we commingle funds? Absolutely we can. And there is no requirement that this go into a specific account, which would be perhaps indicative of a trust relationship. And remember, and this gets back to- It seems like this was a windfall situation, this tax refund. Everybody was talking about taxes owing. So here's this fortuitous event and arguably unconsidered by the tax-sharing agreement. Well, I mean, it was fortuitous in many respects because Congress changed the law to permit it. I mean, there's no question about that. But then the question is, what do we do with it? And I think that is where the policies of 541 come into play and says it has to be kept for the benefit of the estate. Well, does filing for bankruptcy change, if it was a debtor-creditor or a trustee-agent relationship, one or the other, does it change because they went into bankruptcy? Because obviously this relationship existed prior to bankruptcy. Why does bankruptcy-could that change? Well, what changes about bankruptcy is the trust component of it because that's what OMEGAS teaches us. Like if you have an implied equitable trust argument, as you had in OMEGAS, that the bankruptcy code predominates over that so that- Does it matter when you say that it was a constructive trust? It doesn't matter to you. You're using that interchangeably, but OMEGAS was constructive, wasn't it? Exactly, exactly, Your Honor. And so that's where bankruptcy matters. If it's just normal debtor-creditor, same result, same result. Back in your-before we lose you here to sitting down, that's what I meant. Not to a shower. When you were saying why this was clear and it was a debtor-creditor relationship, you used the word adjustment. And is that-out of the TSA-is that an important or a key word here or not? Yes. And the reason is, to get back to Judge Gilman's question, he says is there any indication about what to do with the refund? And that's where it is, section 4. What does adjustment mean as you interpret that word? Adjustment means in this context getting a refund back because it says in the event of any adjustment of liability of the group for a consolidated return any year by reason of the following, including filing a refund application. So you have an adjustment. Just again to be-apply some sort of basic logic, which is sometimes silly. In this case, did the return that they file seek a refund? Yes. And they got the refund? Yes. So where was-am I going wrong in thinking adjustment means something different than refund? Well, the adjustment modifies like four different things here. So-but one of them is the refund application. So in this context- Just tell me succinctly what got adjusted. The tax liabilities amongst the consolidated group. All right. May I make one other point, Your Honor? Briefly. Go. My only other point is when you get back to the question of what you do on remand, if that were the case, they have identified resulting trust. There are three types of resulting trust under Ohio law, and they don't argue that they satisfy any of them. So I think that's, again, significant for your consideration. Thank you. First, Judge McKee, the In Re New Power case is also known as Kitchen v. Boyd, and it appears in the FDIC's opening brief at page 53. Thank you. Whether federal common law or state law, the trustee- Do you want to respond to the last point made, that if it is a resulting trust, you don't meet any of them? Sure, Your Honor. We responded to it in our brief. I'll say the same thing again. We cite, I think, four different cases in Ohio law that apply resulting trust principles. His brief says none of those. You don't meet any of those. No, no, no. Your Honor, what we cite are four cases, including an Ohio Supreme Court case, University Hospitals, that apply resulting trust analysis to situations not included in those three, to situations that are analogous to what's happening here. Perhaps the best one is the Strait case out of the, I believe it's Northern District of Ohio, in which a group of persons who donated $1.5 million to a charity, believing it was going to be used for a specific purpose, a motion to dismiss was filed, and the court held that claim states a resulting trust claim under Ohio state law. That's our claim here. These tax refunds are for a specific purpose. There's no merit to that at all. The very case they rely upon- Go back to what you want to talk about. I'm sorry, Your Honor. I'm sorry to get you off track. On the issue of a default rule, federal law, state common law, either way, this rule has been applied. I think we cite cases from coast to coast, up and down, inside and out, for appeals courts, as Your Honor mentioned. Parties in the position of these parties would expect the default rule to apply unless they explicitly provide otherwise, and that's the import of this court's decision in Mazur, in Heine Printing, and in Jack Henry, some of which involve default rules nowhere near as common as this one. In one case, this court applied that analysis to the rule that says that federal interest rates apply in diversity cases. In another case, it applied it to Michigan guarantee default rules or Michigan land contract default rules. This is as well an established default rule as you can find, and we believe that ends it, and here's why. The default rule that happens to align with Ohio law for a result. Absolutely, Your Honor. As evidenced by Judge Weitzman. You prefer it to be called the default rule, but we keep trying to get to the point whether you need that label. If we apply Ohio law, you get to the same point. Do you need the label that it's the default rule, federal common law? Your Honor, we don't need it, but it's helpful to us, and here's why. If it is, in fact, a default rule, ambiguity yields the following result. No extrinsic evidence. Do not pass go. Do not go to jail. Do not collect $200. Apply the default rule. What would happen in a situation, I'm not saying this here, what would happen in a situation if you're advocating for the default rule and the state law of whatever state the FDIC is worried about here would yield the contrary result? You're still saying the default rule controls over contrary state law. I'm not saying that, Your Honor. I don't have to confront that situation because here there is no difference. But if we had a case like that. But I have to confront that situation because if it yields the same result, then why do we stop do not pass go at the default rule when it's really then turning upon Ohio law? If it yields the same result, Your Honor, the instructions from the Supreme Court on down are clear. A court does not need to decide a conflict of laws issue, whether it's between states, between jurisdictions, or between federal common law, the cases in our brief, and state law. That issue is not presented when the outcome is the same. So you're actually comfortable then, try to put words in your mouth that didn't work very well earlier, you're actually comfortable with us starting with Ohio law, and if you win and or you get a remand to consider extrinsic evidence, then we don't have to decide the default rule. Am I saying that right? Well, yes and no, Your Honor. You're saying it right. I'm saying it right, but I'm wrong. I half agree with you and I half disagree with you. Here's why. If you say that Ohio law applies and it's the same rule as Bob Richards, the additional step of saying it's a default rule means you don't remand for extrinsic evidence because under Mazur, Heine Printing, and Jack Henry, if the contract is ambiguous as to whether the default rule applies, you apply the default rule. Now beyond that, Your Honor, there's an admission here in the record. This is in Ray Newpower. Some decision in the Ninth Circuit, i.e. Bob Richards, then basically establishes an element of every state's property law. How can that be? Your Honor, this is a very narrow default rule. It applies not to property generally. It applies to the issue of whether a federal income tax refund, okay, how that should be treated under the federal bankruptcy law. It has no application beyond that. There are considerable federal interests involved here. And the reason why I waffled on your question before about what if we find it state law in some other case, you would need to look in any given case to do an analysis as to whether or not federal common law or state law should apply if they did not reach the same result. We argue, in our brief, that if you did that analysis here, based on the fact that this deals with how to characterize a federal income tax refund under the concerns of the bankruptcy code, it seems like it's a perfect case for federal common law rule. But as I said earlier, the Intermediate Ohio Appellate Court, the Bankruptcy Court for the Northern District of Ohio, in addition to all of these other courts, have applied this rule, and in most instances they have never said whether they were applying a federal common law rule or a state rule. They applied the rule. Beyond that, Your Honor, as in In re New Power, where this court found on appeal that the debtor's admission that it was an agent was alone sufficient to establish agency, under In re New Power, if the parent corporation held this as an agent, the refund belongs to the FDIC, and there is an admission that could not be clearer. On remand, what could these folks possibly say? What evidence could they dig up to refute their statement in a signed contract three months before bankruptcy that we hold this as an agent, we must turn it over immediately to the bank, and we have no rights in this? The answer is there could be no such evidence. Got it. Thanks. Thank you very much for your time, Your Honors. Thank you, Counsel. We have your matter. Consider it carefully. Thank you.